823 So.2d 598 (2002)
MISSISSIPPI STATE HOSPITAL, Appellant,
v.
Rena WOOD, Appellee.
No. 2001-CA-00588-COA.
Court of Appeals of Mississippi.
August 6, 2002.
*599 James P. Streetman, III, Jackson, Steffanie Anne Graves, attorneys for Appellant.
John W. Chapman, Brandon, attorney for Appellee.
Before McMILLIN, C.J., LEE, and BRANTLEY, JJ.
McMILLIN, C.J., for the court.
¶ 1. Rena Wood filed a wrongful death action against the Mississippi State Hospital (MSH), claiming that the hospital violated the standard of care in providing inpatient psychiatric treatment to her nineteen-year old daughter, April Wood, and that this sub-standard care was a proximate contributing cause to April Wood's death by suicide. The case was tried without jury before the Circuit Court of Rankin County and the court entered judgment in favor of Wood, assessing damages at $50,000. MSH has appealed the judgment, claiming that a determination of liability on the part of MSH is against the overwhelming weight of the evidence. Concluding that, under the applicable standard of review, there is evidentiary support for the judgment as entered by the trial court, we affirm the judgment.

*600 I.

Facts
¶ 2. It is unhelpful to repeat in substantial detail the body of evidence presented at trial regarding the unfortunate circumstances that led to young April Wood's hospitalization and ultimate death by suicide while a patient at MSH. It is sufficient to say that there was uncontradicted proof of incidents of substance abuse, multiple unsuccessful suicide attempts, a history of mental depression, and prior hospitalizations to attempt to deal with these problems. Ultimately, April Wood submitted to a voluntary commitment to MSH and was diagnosed with the primary problem of polysubstance drug dependency and a secondary diagnosis of depression. Based on initial evaluations, MSH personnel determined that April Wood's chemical dependency was the more serious problem and began a course of treatment designed primarily to deal with that aspect of her condition. After discovery of the fact that Wood had committed a hospital rule infraction by smoking a marijuana cigarette, she was placed on a form of restriction that involved isolation. At some point during her prescribed period of isolation, she was informed that it was to be extended because of subsequent violations of patient rules. Shortly after that, she was discovered to have caused her own death by hanging.
¶ 3. Evidence was presented that MSH, in formulating a course of treatment and in evaluating her for possible suicide risk, had relied primarily on the history related by the patient and on her own representations that she was not contemplating such a course. No effort was made to obtain additional medical history from the patient's mother or other family member. Though MSH contended that the involuntary isolation procedure was intended to be therapeutic in effect, the plaintiff presented writings by the patient made before her death indicating that she felt it was a form of punishment, causing her to become more depressed.
¶ 4. At trial, Wood presented the expert testimony of Dr. Wood Coleman Hiatt, a practicing psychiatrist and former faculty member at the University of Mississippi Medical School, who expressed the view that the course of treatment undertaken by MSH violated the standard of care for a patient presenting the psychological symptoms of April Wood. Dr. Hiatt further offered his expert opinion that this violation of the standard of care was a proximate contributing cause to April Wood's ultimate suicide while a patient at the hospital. In particular, Dr. Hiatt offered the view that MSH personnel had erred in treating her substance abuse problems as the primary focus when she was exhibiting signs of severe depression and had a history of suicide attempts. Dr. Hiatt observed that, had hospital personnel consulted with April Wood's mother, she would have related to them many of the statements and actions taken by Wood in the time leading up to her hospitalization that would have plainly demonstrated the depth of her depression; however, he noted that no such effort was undertaken in determining a diagnosis and course of treatment. Additionally, Dr. Hiatt observed that Wood had indicated to hospital personnel that she had determined a way to resolve her problems, which should have been understood as an indication that she was seriously contemplating a suicide effort. Finally, Dr. Hiatt expressed the view that the somewhat punitive action of isolating Wood without placing her under some sort of frequent observation in the nature of a "suicide watch" was an inappropriate course of treatment for a person in Wood's psychological state.
*601 ¶ 5. MSH, in defense, presented a number of witnesses who were involved in the diagnosis and treatment of Wood in the time leading up to her suicide. Included among these witnesses was Dr. Alexis Polles, who was the principal treating physician for Wood. Dr. Polles testified in some detail regarding the actions taken in regard to properly diagnosing and treating Wood and defended the decisions made by MSH personnel, including the decision not to place Wood under suicide watch, testifying that the symptoms exhibited by Wood did not warrant such an action. MSH did not present opinion evidence from an expert in the field who was not directly involved in the actual treatment of Wood who might have offered an independent, and possibly different view from that of Dr. Hiatt, as to whether the various decisions on care were within the standard of care for health care providers offering the type of treatment extended to April Wood.
¶ 6. Based upon this conflicting evidence regarding whether the applicable standard of care was violated, the trial court found the evidence offered by Dr. Hiatt compelling and determined that there had been, in fact, a violation of the standard of care which had been a proximate contributing cause to Wood's suicide. He entered judgment in favor of Rena Wood as wrongful death beneficiary for her daughter, April Wood, in the amount of $50,000. This appeal ensued.

II.

Discussion
¶ 7. This case was brought under this state's Tort Claims Act, which permits negligence actions against state agencies under certain conditions that include the requirement that, if the matter comes to trial, it will be conducted as a bench trial. Simpson v. City of Pickens, 761 So.2d 855, 860(¶ 15) (Miss.2000). In that situation, the trial court sits as finder of fact and, when the court's factual determinations are challenged on appeal, the reviewing court must consider the entire record and is obligated to affirm where there is substantial evidence in the record to support the trial court's findings. Ezell v. Williams, 724 So.2d 396, 397 (Miss.1998). We find that Dr. Hiatt's expert testimony was competent on the question of the relevant standard of care that was before the court for decision and, though his opinion was sharply contradicted by competing opinion evidence presented by the defense, Dr. Hiatt was not substantially impeached nor was his expertise or credibility cast into doubt through cross-examination or any of the other recognized methods of impeaching the effectiveness of a witness. The trial court, as has long been recognized, observes the witnesses first hand and is in the best position to assess the persuasiveness of a witness and to decide what weight to afford that witness's testimony. Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947(¶ 16) (Miss.2000).
¶ 8. In this appeal, MSH, other than arguing for the credibility and persuasive power of its own witnesses, points to nothing of note in the record that would suggest that the trial court was manifestly in error in its decision to accept the view of Dr. Hiatt as to (a) the standard of care reasonably to be expected from an organization providing in-patient psychiatric care to a person in the situation in which April Wood found herself and (b) his view, expressed in direct testimony and persistently defended during cross-examination, that MSH had violated that standard of care in this case in a manner that substantially increased the likelihood that April Wood would have both the opportunity and a compelling psychological impulse to do harm to herself.
*602 ¶ 9. Based on our limited standard of review, we find that there is, beyond question, substantial evidence in the record to support the trial court's factual determination establishing both the standard of care and its violation by MSH. In that circumstance, it is the duty of this Court to affirm the judgment of the trial court.
¶ 10. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.